■ MARK HARRINGTON et al., Respondents, v GARY FERNET et al., Defendants, and CHARLEW CONSTRUCTION COMPANY, INC., Defendant and Third-Party Plaintiff-Appellant. STACY HARRINGTON et al., Third-Party Defendants-Respondents. [937 NYS2d 746]——

Egan Jr., J.

In September 2006, plaintiff Mark Harrington (hereinafter Harrington) was an employee of third-party defendant M&A Construction,[1] a framing contractor hired by defendant Charlew Construction Company, Inc. to work on a residential housing development in the City of Troy, Rensselaer County.[2] On the day in question, Harrington was using a Hitachi pneumatic framing gun loaded with $2^3/8$-inch nails to attach sheathing to the exterior walls of one of the residences. Proper operation of the framing gun entailed a two-step process: first placing the nose of the gun against the work surface and then depressing the trigger mechanism. Although there is some dispute as to the precise manner in which the accident occurred,[3] the end result was that Harrington discharged a nail into his right leg just above his kneecap.

---

**1.** M&A Construction is owned by third-party defendants Stacy Harrington and Donald Harrington, who are Harrington's sister-in-law and brother, respectively.

**2.** Charlew was both the general contractor for the project and the landowner.

**3.** Harrington asserts that he was compelled to work on a muddy, sloped section of ground—occasioned, in turn, by inclement weather conditions and Charlew's alleged failure to properly backfill around the foundation of the residence in question—and that this hazardous condition caused him to slip and fall, discharging the nail gun into his leg in the process. One of Harrington's coworkers, however, disputed this account of the incident, stating instead that Harrington—with his finger on the trigger—foolishly placed the nose of the nail gun against his thigh and then used the nail gun as leverage as he attempted to step up onto a windowsill, causing the nail gun to discharge.

Harrington and his spouse, derivatively, thereafter commenced this action against, among others, Charlew alleging violations of Labor Law §§ 200, 240 (1) and § 241 (6) and common-law negligence. Charlew, in turn, commenced a third-party action for contribution and/or indemnification against M&A and its owners. Following joinder of issue and discovery, Charlew moved for summary judgment dismissing plaintiffs' complaint and summary judgment on its contribution/indemnification claims. Supreme Court granted Charlew's motion to the extent that it dismissed plaintiffs' Labor Law § 241 (6) claim, denied the motion as to plaintiffs' Labor Law § 200 and common-law negligence claims and deemed the request for summary judgment as to the contribution and/or indemnification claims to be premature. This appeal by Charlew ensued.[4]

We affirm. The record as a whole—including Harrington's examination before trial testimony—indeed establishes that Charlew did not supervise Harrington (or any of M&A's employees) or otherwise direct and control the means and methods of the framing work. Contrary to Charlew's assertion, however, such proof is not dispositive of the underlying motion because this is not a "means and methods" case; rather, this is a "hazardous condition" case (see *Mott v Tromel Constr. Corp.*, 79 AD3d 829, 830 [2010]).

"Labor Law § 200 is a codification of the common-law duty imposed upon an owner or general contractor to provide construction site workers with a safe place to work" (*Gadani v Dormitory Auth. of State of N.Y.*, 43 AD3d 1218, 1220 [2007] [internal quotation marks and citation omitted]; see *Fassett v Wegmans Food Mkts., Inc.*, 66 AD3d 1274, 1275-1276 [2009]). Where, as here, the injured worker contends that the underlying "accident arose not from the manner in which the work was performed, but rather from an allegedly dangerous condition at the work site, liability for a violation of Labor Law § 200 and common-law negligence will be imposed if the property owner created the condition or had actual or constructive notice of it, and failed to remedy the condition within a reasonable amount of time" (*White v Village of Port Chester*, 84 AD3d 946, 947-948 [2011]; see *Gray v City of New York*, 87 AD3d 679, 679-680 [2011]; *Weinberg v Alpine Improvements, LLC*, 48 AD3d 915, 918-919 [2008]; *Beadleston v American Tissue Corp.*, 41 AD3d 1074, 1076-1077 [2007]). The hazardous condition alleged here is the purported absence of backfill around the foundation in question.

4. In response to Charlew's subsequent motion to reargue, plaintiffs withdrew their Labor Law § 240 (1) cause of action.

In support of its motion for summary judgment, Charlew tendered the examination before trial testimony of one of its representatives, one of M&A's representatives and one of Harrington's coworkers, all of whom unequivocally testified that the backfilling had been completed prior to the day of Harrington's accident. Such testimony further established that at the time of Harrington's accident, he was not standing upon a muddy slope but, rather, upon compacted sand—the latter of which, third-party defendant Donald Harrington testified, constituted a safe and stable place to work. Hence, the argument continues, no hazardous condition existed upon the work site in the first instance.

Although the foregoing proof was, in our view, more than sufficient to discharge Charlew's initial burden on the motion for summary judgment,[5] Harrington testified with equal clarity that the foundation had not been backfilled at the time of his accident and that this absence of backfilling, coupled with the rainy conditions existing on site that day, produced a slippery, muddy "60-degree slope" that, in turn, caused him to slip, fall and accidentally discharge the nail into his leg. While Harrington's description of the site conditions and the manner in which his injury occurred is sharply contradicted by other evidence in the record, it is well settled that "[i]t is not the court's function on a motion for summary judgment to assess credibility" (*Ferrante v American Lung Assn.*, 90 NY2d 623, 631 [1997]; *see Oliver v Tanning Bed, Inc.*, 50 AD3d 1259, 1261 [2008]). As Harrington's testimony is sufficient to raise a question of fact as to the existence of a hazardous condition at the construction site, Charlew's motion for summary judgment in this regard was properly denied.[6]

Finally, Supreme Court appropriately declined to address the indemnification issue. Unless Charlew may be said to be "free from active negligence" (*Husted v Central N.Y. Oil & Gas Co., LLC*, 68 AD3d 1220, 1223 [2009])—a determination that cannot be made at this juncture—its claim for either contractual or common-law indemnification is premature (*see Cook v Orchard Park Estates, Inc.*, 73 AD3d 1263, 1266 [2010]). Charlew's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.

---

5. Our conclusion in this regard would be no different if we evaluated such proof in the context of Charlew's role as the general contractor instead of its role as the landowner (*see Harsch v City of New York*, 78 AD3d 781, 782-783 [2010]; *Wolfe v KLR Mech., Inc.*, 35 AD3d 916, 918 [2006]).

6. To the extent that Charlew argues, in the alternative, that the defect alleged by Harrington was open and obvious, thereby absolving it of liability, we need note only that the record before us is insufficiently developed to permit us to grant Charlew summary judgment on this basis.

Spain, J.P., Malone Jr., Stein and McCarthy, JJ., concur. Ordered that the order is affirmed, with one bill of costs.