■ CHRISTOPHER CARD, Respondent, v CORNELL UNIVERSITY et al., Appellants. (Action No. 1.) CARLOS E. PLUMLEY et al., Respondents, v CORNELL UNIVERSITY et al., Appellants. (Action No. 2.) [985 NYS2d 740]—

Garry, J. Appeal from an order of the Supreme Court (Mulvey, J.), entered November 30, 2012 in Tompkins County, which partially denied defendants' motions for summary judgment dismissing the complaints.

Defendant McCarthy Building Companies, Inc., the construction manager in the construction of a new building on the campus of defendant Cornell University, hired LeChase Construction Services, LLC as a subcontractor to perform masonry and concrete work. Shortly after LeChase employees built an eight-inch-thick concrete half wall, McCarthy advised LeChase that the wall did not comply with specifications requiring it to be 14 inches thick.[1] Plaintiff Carlos E. Plumley, a field supervisor for LeChase, thereafter assembled a team of employees, including plaintiff Christopher Card, to demolish the wall so that it could be rebuilt. Plumley planned to remove the wall by first separating it from horizontal and vertical rebar that secured it to an adjacent wall and the underlying concrete floor, and then lifting it out of place with a steel choker attached to a forklift. In preparation, LeChase employees made a hole in the wall for the choker, chipped concrete away from the wall's base, and severed the horizontal rebar. Before severing the vertical rebar, and also before putting the steel choker in place, pressure was applied to the wall with the forklift. The vertical rebar unexpectedly popped loose and the wall fell, landing in part on the feet of Plumley and Card. Inspection later revealed that the vertical rebar, which should have been set at a depth of 10 inches

---

**1.** The error apparently resulted from discrepancies in the construction drawings.

in the underlying floor, had in fact been set at a depth of only about four inches.

Card, Plumley and Plumley's wife, derivatively, commenced these actions alleging common-law negligence and violations of Labor Law §§ 200 and 241 (6) against McCarthy and Cornell. Defendants thereafter moved for summary judgment dismissing the complaints. Supreme Court partially granted the motions by dismissing plaintiffs' claims under Labor Law § 241 (6) to the extent that they were based upon 12 NYCRR 23-1.5 (a) and 23-3.4 (c) (3), and by dismissing plaintiffs' negligence and Labor Law § 200 claims against Cornell. The motions were otherwise denied. Defendants appeal.

Initially, defendants contend that Supreme Court erred in refusing to dismiss plaintiffs' Labor Law § 200 and common-law negligence claims against McCarthy. Labor Law § 200 codifies the common-law duty imposed upon owners and general contractors to maintain a safe work site (*see Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 352 [1998]; *Harrington v Fernet*, 92 AD3d 1070, 1071 [2012]). Accordingly, to impose liability upon a general contractor for an injury resulting from a subcontractor's unsafe work practices, there must be a showing of supervisory control and actual or constructive knowledge of the unsafe manner of performance (*see Rought v Price Chopper Operating Co., Inc.*, 73 AD3d 1414, 1416 [2010]; *Fassett v Wegmans Food Mkts., Inc.*, 66 AD3d 1274, 1276 [2009]); when an injury is caused by a dangerous condition at the job site, a showing of control of the place of injury and actual or constructive notice of the unsafe condition is required (*see Edick v General Elec. Co.*, 98 AD3d 1217, 1219 [2012]; *Weinberg v Alpine Improvements, LLC*, 48 AD3d 915, 918 [2008]; *Gadani v Dormitory Auth. of State of N.Y.*, 43 AD3d 1218, 1220-1221 [2007]).

Here, the parties disagree as to whether the accident was caused by LeChase's allegedly unsafe demolition methods or by a dangerous condition resulting from the shallow vertical rebar, and also disagree as to the extent of McCarthy's supervisory authority and knowledge. As defendants argue, Plumley acknowledged that he supervised and controlled the work of LeChase employees at the job site, specifically including the construction and subsequent demolition of the half wall. He further made the decision and devised the plan to demolish the wall, and assembled and directed the team of employees who undertook the work. However, there was also evidence that McCarthy employees directed LeChase to undertake corrective work, that McCarthy knew that such work was underway, and that a McCarthy project manager was present during the demo-

lition operation. Further, there was evidence revealing that McCarthy employees regularly instructed LeChase employees as to how to perform their work on the project, and had previously directed them to undertake specific tasks, stop work, or change their work practices. Plumley testified that McCarthy employees had, on occasion, contradicted his orders to LeChase employees. A LeChase project manager testified that McCarthy employees directed LeChase's work on the project, and a LeChase employee stated that "[o]n that site, if McCarthy told you to do something, you did it or you're off the job."

With reference to the half wall, a LeChase employee testified that as he and another LeChase worker began to construct it according to LeChase's directions, a McCarthy construction site superintendent stopped their work and directed them not to drill holes for the vertical rebar 12 to 14 inches deep, as they had intended to do, but instead to limit the depth to $4^{1}/_{2}$ inches because of concern that the drill might penetrate the ceiling of an occupied room below. This employee further testified that he complied with this direction and did not advise LeChase supervisors. The McCarthy superintendent in question denied that he had given this direction, but acknowledged that he had instructed LeChase employees to limit the depth at which rebar was set in other locations on the Cornell project. Plumley testified that he did not know that the rebar had not been set at the specified depth and that, if he had known, he would have used a different demolition method, since the shallow depth of the vertical rebar compromised the wall's structural integrity and made it susceptible to tipping over under pressure from the side. Finally, plaintiffs' expert engineer opined that the wall would not have fallen over if the rebar had been installed at the specified depth.[2] This evidence poses triable issues of fact as to whether Card's and Plumley's injuries resulted from a dangerous condition or from the manner in which the demolition work was performed, as well as the extent of McCarthy's authority to control the work that resulted in the accident, and whether McCarthy created or had notice of a dangerous condition. Accordingly, Supreme Court properly refused to dismiss the common-law negligence and Labor Law § 200 claims against McCarthy (*see Oakes v Wal-Mart Real Estate Bus. Trust,* 99 AD3d 31, 41 [2012]; *Cook v Orchard Park Estates, Inc.,* 73 AD3d 1263, 1265-

---

2. Contrary to defendants' contentions, the expert's opinion was not so speculative or unsupported by an evidentiary foundation as to be given no probative force. Upon review, we find the expert's affidavit testimony sufficiently supported by the record documents and depositions upon which he relied (*see Searle v Cayuga Med. Ctr. at Ithaca,* 28 AD3d 834, 837 [2006]).

1266 [2010]; *compare Blysma v County of Saratoga*, 296 AD2d 637, 639 [2002]).

We further reject defendants' contention that plaintiffs' remaining Labor Law § 241 (6) claims should have been dismissed on the ground that the underlying regulations are inapplicable. As pertinent here, 12 NYCRR 23-3.3 (b) (3) and (c) require that walls are not to be left unguarded during hand demolition in such a condition that they may fall, and that continuing inspections must take place during such operations to detect hazards, such as weakened walls created by the progress of the work. Plaintiffs additionally relied upon 12 NYCRR 23-3.4 (b), providing that walls and other building parts must not be left unguarded during mechanical demolition such that they might fall. We accept defendants' contention that these regulations are inapplicable to hazards that result directly from the performance of demolition work (*see Maldonado v AMMM Props. Co.*, 107 AD3d 954, 955 [2013] [glass pane was dropped while it was being removed]; *Vega v Renaissance 632 Broadway, LLC*, 103 AD3d 883, 885 [2013] [pipes fell while being removed from a ceiling]; *Bolster v Eastern Bldg. & Restoration, Inc.*, 96 AD3d 1123, 1125 [2012] [door dropped while being removed]). Instead, the purpose of these regulations is to address structural instability resulting from the progress of demolition (*see Wilinski v 334 E. 92nd Hous. Dev. Fund Corp.*, 18 NY3d 1, 12-13 [2011]; *see also Sainato v City of Albany*, 285 AD2d 708, 711 [2001]). Here, the evidence reveals that LeChase's employees did not intend to push the wall over when they applied "gentle" pressure with the forklift, but were instead attempting to stabilize the wall while the underlying vertical rebar was severed, so that the wall could be lifted out of place. Plaintiffs claim that the wall fell because of structural instability resulting from the removal of the horizontal rebar and part of the wall's concrete base, as well as the unexpected shallowness of the remaining rebar. Accordingly, Supreme Court correctly determined that these regulations apply, and that issues of fact exist as to whether violation of these provisions proximately caused Card's and Plumley's injuries.

Peters, P.J., Lahtinen and McCarthy, JJ., concur. Ordered that the order is affirmed, with costs.