Schoonover v Diaz (2023 NY Slip Op 06578)

Schoonover v Diaz

2023 NY Slip Op 06578

Decided on December 21, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 21, 2023

CV-22-2241
[*1]Keith R. Schoonover, Respondent,
v
George C. Diaz et al., Respondents, and Albany Downtown Hotel Partners, LLC, et al., Appellants, et al., Defendant. (And a Third-Party Action.)

Calendar Date:October 13, 2023

Before:Egan Jr., J.P., Clark, Ceresia, McShan and Powers, JJ.

Goldberg Segalla, Albany (William J. Greagan of counsel), for appellants.
Powers & Santola, LLP, Albany (Michael J. Hutter of counsel), for Keith R. Schoonover, respondent.
Law Office of Robert L. Hartford, Getzville (Jeffrey T. Culkin of counsel), for George C. Diaz and another, respondents.

Powers, J.
Appeal from an order of the Supreme Court (Denise A. Hartman, J.), entered November 18, 2022 in Albany County, which, among other things, granted plaintiff's motion for partial summary judgment.
Plaintiff, a laborer employed by a nonparty, was allegedly injured in 2016, during construction on a hotel owned by defendants Albany Downtown Hotel Partners, LLC and Banyon Investment Group, Inc. (hereafter collectively referred to as defendants). Defendants had hired defendant Hospitality Specialist, Inc. as the general contractor for the project. On the day of the accident, plaintiff was guiding a two-person basket lift, operated by his supervisor, through the hotel's rear parking lot while the construction was underway. Plaintiff was walking backwards facing the basket lift when he was struck and knocked to the ground by a vehicle operated by defendant George C. Diaz, a hotel employee, who was backing out of a parking space to move his car at the request of a hotel valet. Defendant Diaz was ticketed for unsafe backing under Vehicle and Traffic Law § 1211 (a) and subsequently pleaded guilty to that violation.
Plaintiff commenced this action alleging, among other claims, violations of Labor Law §§ 200 and 241 (6) and common-law negligence. Following discovery, plaintiff moved for, among other relief, partial summary judgment granting so much of the complaint as alleged liability on his Labor Law § 241 (6) claim. Defendants opposed the motion and cross-moved for, among other things, summary judgment dismissing so much of the complaint as alleged liability under common-law negligence and violation of Labor Law § 200. Supreme Court, among other things, granted plaintiff's motion and denied defendants' cross-motion. This appeal by defendants ensued.
We begin our analysis with defendants' contention that the specific provision of the Industrial Code relied upon by plaintiff as the basis of his Labor Law § 241 (6) cause of action does not apply to the facts of the instant case. A plaintiff must allege a violation of an express specification promulgated by the Commissioner of Labor in the Industrial Code as a predicate to a cause of action under Labor Law § 241 (6) (see Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 505 [1993]). Labor Law § 241 (6) imposes a non-delegable duty on owners and contractors to provide reasonable and adequate protection to employees and persons lawfully frequenting areas in which construction is being performed (see Long v Forest-Fehlhaber, 55 NY2d 154, 159 [1982]; Allen v Cloutier Constr. Corp., 44 NY2d 290, 298 [1978]). "[A]n action predicated upon Labor Law § 241 (6) must refer to a violation of the specific standards set forth in the implementing regulations (12 NYCRR part 23) adopted by the Industrial Board of Appeals" (Simon v Schenectady N. Cong. of Jehovah's Witnesses, Cong. No. 76802 of Watchtower Bible Tract Socy., 132 AD2d 313, 317 [3d Dept 1987]).
In support of his claim under Labor Law § 241 (6), plaintiff relies [*2]exclusively on 12 NYCRR 23-1.29-Public Vehicular Traffic, which provides under subdivision (a) that, "[w]henever any construction, demolition or excavation work is being performed over, on or in close proximity to a street, road, highway or any other location where public vehicular traffic may be hazardous to the persons performing such work, such work area shall be so fenced or barricaded as to direct such public vehicular traffic away from such area, or such traffic shall be controlled by designated persons." Defendants contend that Supreme Court erroneously interpreted the regulation because, by a plain reading of its language, it does not extend to construction performed within a gated parking lot, having only one entrance, separated from the nearest road by a sidewalk, with its use restricted to hotel employees and guests who gain access with a key card. Further, defendants argue that the term "traffic" does not include vehicles moving within a confined area designated for parking. The meaning and applicability of a regulation is a legal question and, as such, is the province of the court (see Morris v Pavarini Constr., 22 NY3d 668, 673 [2014]). We reject defendants' argument that the phrase "any other location" excludes property used as a parking area, and also disagree that the term "traffic" should be construed narrowly. Further, we reject that the language "in close proximity to a street, road, highway" is negated by the existence of a sidewalk. To the contrary, we find that defendants' interpretation would diminish the regulation's overall purpose of ensuring worker safety and, as such, find the regulation applicable here (see Matter of ATM One v Landaverde, 2 NY3d 472, 476-477 [2004]).
We next consider defendants' challenge that, even if 12 NYCRR 23-1.29 applies, it was, in any event, not violated as plaintiff was a designated flagger within the purview of the regulation. As relevant here, subdivision (b) provides that "[e]very designated person authorized to control public vehicular traffic shall be provided with a flag or paddle measuring not less than 18 inches in length and width. Such flag or paddle shall be colored fluorescent red or orange and shall be mounted on a suitable hand staff. Such designated person shall be stationed at a proper and reasonable distance from the work area and shall face approaching traffic."
In support of their motion, defendants point to contradictions between plaintiff's testimony at deposition stating, "[I] think [I] had a flag" and "I'm pretty sure I had one," with his subsequent affidavit in opposition to the motion reciting, "there were flags on the job site but I do not recall that I was using one" and "I have recently verified with [my supervisor] that I was not using a flag . . . nor . . . was I ever told to use one." Notably, the record does not contain evidence that plaintiff received training at any time nor was otherwise qualified to be a flagger. Nevertheless, defendants contend that their [*3]obligation with respect to traffic management was discharged through the supervisor who allegedly assigned plaintiff to the task of guiding the basket lift's operation through the parking lot. We find defendants' argument unpersuasive. Plaintiff testified at deposition that "my role was just making sure that nobody, you know, got in between or close to the tire of the lift." When asked whether he was acting as traffic control, plaintiff responded, "I wouldn't go that far. I would just say trying to be safety conscious . . . . [I was] not watching [for people] but just being a person who was by the lift." Plaintiff later supplemented his deposition testimony, averring that "[a]t no time on this job site was I ever acting as a 'designated flagger' or a 'traffic control person' or 'directing traffic,' . . . My job was to help guide [the supervisor] through the parking lot maze."
To the extent that defendants support their contention by submitting an affidavit from their expert opining that, "within a reasonable degree of Certified Professional Safety certainty," plaintiff was a "spotter tasked with controlling the area of the basket lift moving in the parking lot," we find this opinion lacking in evidentiary value. The determination of whether a particular condition is within the scope of an industrial regulation presents a question of law for the court (see generally Misicki v Caradonna, 12 NY3d 511, 515 [2009]). Moreover, the expert's affidavit sets forth merely generalized and conclusory assertions (see Mitchell v T. McElligott, Inc., 152 AD3d 928, 931 [3d Dept 2017]). That said, unlike the contravention of a statute, "a violation of a regulation does not necessarily establish a right to summary judgment on a Labor Law § 241 (6) cause of action" (Copp v City of Elmira, 31 AD3d 899, 900 [3d Dept 2006]; see Wells v British Am. Dev. Corp., 2 AD3d 1141, 1144 [3d Dept 2003]; Musillo v Marist Coll., 306 AD2d 782, 784 [3d Dept 2003]; Daniels v Potsdam Cent. School Dist., 256 AD2d 897, 898 [3d Dept 1998]). Contrary to being conclusive, proof of a regulatory violation is merely "some evidence" to be considered on the question of negligence (see Paolangeli v Cornell Univ., 296 AD2d 691, 693 [3d Dept 2002] [internal quotation marks and citation omitted]). To prevail, plaintiff must also make a showing that the violation was a proximate cause of his injuries. Here, plaintiff concedes that Supreme Court neglected to address the issue of causation but argues that it was nonetheless implicit in the court's ruling. We cannot agree. Diaz testified, at deposition, that "I signaled [the supervisor] as in verbally and moving my hands saying that I'm getting into the vehicle[, a]nd he acknowledged me with a nod. . . . I thought he was saying that it was okay for me to get in the vehicle." The supervisor, on the other hand, stated, "I could see . . . [Diaz] getting into the car . . . and there was no eye contact, head nod, hand signal or any other form of communication [*4]or warning that [Diaz] gave to [plaintiff] that he was going to move his car[ ] out of the parking space. . . . I tried to warn [plaintiff] about the car backing up but the driver moved backwards so fast there was no time." Certainly, the foregoing presents a question of fact which must be resolved by a jury. While a rational jury could reasonably conclude that defendants' failure to meet their responsibility to either erect a fence or barricade or designate a flagger was a substantial factor in causing plaintiff's injury, it is just as reasonable and likely that a rational jury could credit Diaz' claim that he signaled the supervisor — through his gesture of pointing to his car as he got into it — and his claim that the supervisor nodded in acknowledgement — was a substantial factor in causing plaintiff's injury, or even that both explanations were proximate causes of plaintiff's injury. Viewing, as we must, the evidence in the light most favorable to the nonmovant, we do not find a judicial determination as to proximate cause to be appropriate on these facts (compare Robinson v East Med. Ctr., LP, 6 NY3d 550, 554 [2006]). Therefore, Supreme Court erred in granting plaintiff summary judgment on the issue of liability on the Labor Law § 241 (6) cause of action.
We now turn to consider whether Supreme Court properly denied summary judgment to defendants as to plaintiff's common-law negligence claims and Labor Law § 200 cause of action. Labor Law § 200 codifies "the common-law duty imposed upon an owner or general contractor to provide construction workers with a safe place to work" (Comes v New York State Elec. and Gas Corp., 82 NY2d 876, 877 [1993]; see Jock v Fien, 80 NY2d 965, 967 [1992]). The statute provides, in pertinent part, as follows: "All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons" (Labor Law § 200 [2]). Where an accident results from a dangerous or defective condition on the premises, of which the owners were aware, or should have been aware, and failed to remedy or warn of the danger, the plaintiff must demonstrate that the owners created or had actual or constructive notice of the allegedly unsafe condition in order to establish liability under Labor Law § 200 (see Harrington v Fernet, 92 AD3d 1070, 1071 [3d Dept 2012]; Cook v Orchard Park Estates, Inc., 73 AD3d 1263, 1264 [3d Dept 2010]; Wolfe v KLR Mech., Inc., 35 AD3d 916, 919 [3d Dept 2006]). In such circumstances, whether defendants supervised or controlled the performance of the work is irrelevant to liability.
In contrast, where injuries result from the means or methods employed on the worksite, plaintiff [*5]must show that defendants exercised some supervisory control over the work performance in order for defendants to be held liable (see Rizzuto v L.A. Wenger Contr. Co., 91 NY2d 343, 352 [1998]). In such circumstances, general supervisory control is insufficient as liability requires actual supervisory input as to how the work is performed (see Riccio v Shaker Pine, 262 AD2d 746, 748 [3d Dept 1999], lv dismissed 93 NY2d 1042 [1999]). Liability will only be imposed where there was "the authority to control the activity bringing about the injury to enable [the owners] to avoid or correct an unsafe condition" (Russin v Louis N. Picciano & Son, 54 NY2d 311, 317 [1981]; see Doskotch v Pisocki, 168 AD3d 1174, 1177 [3d Dept 2019]; Vogler v Perrault, 149 AD3d 1298, 1299 [3d Dept 2017]).
Notably, the parties disputed before Supreme Court, and continue to disagree here, whether the accident arose from a dangerous condition — the active vehicular traffic within the parking lot — or, instead, resulted from unsafe work methods, but the court nonetheless concluded that, regardless of the circumstances out of which the injury arose, plaintiff set forth issues of fact as to defendants' knowledge of the dangers posed by public access during construction, as well as the extent, if any, to which defendants exercised supervisory control over project performance. While we disagree, in part, with Supreme Court's analysis, we nevertheless conclude that defendants' cross-motion under either category of Labor Law § 200 was properly denied.
In support of their cross-motion, regarding the issue of a dangerous condition, defendants tendered an affidavit from the hotel's general manager averring that he "had firsthand personal knowledge of the construction project being completed including witnessing some of the construction work that was performed . . . [and defendants] did not direct or supervise any of the construction[ ] workers on the project or provide them with any instruction on how to perform their work or regarding any of the methods or means of the . . . construction work . . . [, nor] provide any equipment or any materials to any of the contractors." In addition, defendants' expert opined that "[p]laintiff was too close to the lift to properly observe conditions around him." Thus, having failed to discharge their initial burden of proof on the cross-motion, the burden did not shift to plaintiff as to Labor Law § 200 liability premised upon a dangerous or defective condition.
With regard to liability premised upon the means or methods of plaintiff's work performance, however, the foregoing proof is, in our view, sufficient to establish, prima facie, that defendants did not have supervisory control over the manner in which the construction work was conducted. Thus, the burden, as to this category of liability, shifted to plaintiff to establish the existence of material facts regarding the extent, if any, to which defendants retained or exercised control over the project[*6]. In opposition to the cross-motion, plaintiff testified at his deposition that "the wind was a lot stronger than what the lift was rated for" so "we were not going to work that day." Plaintiff also tendered an affidavit from his supervisor averring that "I was concerned about the high winds in the area and felt it was not safe to use the man lift . . . . [The hotel's general manager] was . . . the person in charge of the hotel property and the construction project
. . . . This project was behind schedule and we were being pushed to finish it . . . . [The hotel's general manager] argued that it was safe enough and that we needed to continue working." Contrary to defendants' contention, in our view, a rational jury could find, upon this foregoing evidence, that defendants retained authority beyond inspection of the work, regardless of which party might have final say. As plaintiff raised a question of fact, defendants were not entitled to summary judgment dismissing plaintiff's Labor Law § 200 cause of action based upon a lack of supervisory control over the project (see Edick v General Elec. Co., 98 AD3d 1217, 1219-1220 [3d Dept 2012]).
The parties' remaining contentions, to the extent not expressly addressed herein, have been considered and determined to be lacking in merit.
Egan Jr., J.P., Clark, Ceresia and McShan, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as granted plaintiff's motion for partial summary judgment on the issue of Labor Law § 241 (6) liability; motion denied to said extent; and, as so modified, affirmed.