[8 NE3d 317, 985 NYS2d 202]

GLENFORD MORRIS, Respondent, v PAVARINI CONSTRUCTION et al., Appellants.

Argued January 9, 2014; decided February 20, 2014

## POINTS OF COUNSEL

*London Fischer LLP*, New York City (*David B. Franklin* and *Daniel Zemann, Jr.*, of counsel), for appellants. I. 12 NYCRR 23-2.2 (a) can only be sensibly applied to completed forms which are serving as a mold for liquid concrete. (*Mueller v PSEG Power N.Y., Inc.*, 83 AD3d 1274; *McCormick v 257 W. Genesee, LLC*, 78 AD3d 1581; *People v Giordano*, 87 NY2d 441; *Rocovich v Consolidated Edison Co.*, 78 NY2d 509; *Matter of Albano v Kirby*, 36 NY2d 526.) II. The First Department's opinion ignores this Court's instructions and sets forth an unworkable standard. (*Allen v Cloutier Constr. Corp.*, 44 NY2d 290; *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494.) III. The language of comparable code provisions underscores that 12 NYCRR 23-2.2 (a) is only intended to apply to completed forms. (*Nostrom v A.W. Chesterton Co.*, 15 NY3d 502.)

*Hill & Moin LLP*, New York City (*Cheryl Eisberg Moin* of counsel), for respondent. This Court rejected the argument that 12 NYCRR 23-2.2 (a) may not as a matter of law apply to uncompleted forms; the uncontradicted testimony supports the sensibility of applying the regulation at bar. (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494; *Zimmer v Chemung County Performing Arts*, 65 NY2d 513; *Kane v Coundorous*, 293 AD2d 309; *Amato v State of New York*, 241 AD2d 400, 91 NY2d 805; *Mueller v PSEG Power N.Y., Inc.*, 83 AD3d 1274; *McCormick v 257 W. Genesee, LLC*, 78 AD3d 1581.)

**OPINION OF THE COURT**

RIVERA, J.

Defendants Pavarini Construction and Vornado Realty Trust appeal, pursuant to leave granted by the Appellate Division, from an order of that court that reversed, on the law, a Supreme Court order granting their motion for summary judgment dismissing plaintiff Glenford Morris' Labor Law § 241 (6) claim, which is predicated upon a violation of 12 NYCRR 23-2.2 (a). Upon a search of the record, the court granted summary judgment to plaintiff (98 AD3d 841 [2012]). The Appellate Division would later certify the following question to this Court: "Was the decision and order of this [c]ourt, which reversed the order of the Supreme Court, properly made?" We affirm the Appellate Division order and answer the certified question in the affirmative.

This is the second time the matter is before us, the Court having rendered a decision in this case in July 2007 reversing and remitting the matter to Supreme Court so that the parties could develop a fuller record on which to decide plaintiff's section 241 (6) claim (*see* 9 NY3d 47 [2007]).

## I.

Plaintiff is a carpenter who was working at a building construction site in Manhattan when a large, flat object fell on and injured his hand. He commenced this personal injury action against defendants, the construction manager and owner of the building, alleging common-law negligence and violations of Labor Law §§ 200, 240, and 241 (6). As relevant to this appeal, in support of his section 241 (6) claim plaintiff alleged to Supreme Court that the object that fell on his hand was a "form" subject to specific safety requirements under Industrial Code (12 NYCRR) § 23-2.2 (a). A form refers to a mold used in the shaping and solidification of concrete. Defendants countered that the object was not a "form" within the meaning of the Industrial Code because it was only one side of an as-yet uncompleted form; in other words a component of an unfinished form.

Supreme Court denied defendants' motion to dismiss plaintiff's section 241 (6) claim.[1] The Appellate Division reversed,

---

1. Supreme Court granted defendants' motion to dismiss plaintiff's section 200 and common-law negligence claims, and plaintiff agreed by stipulation to discontinue his section 240 claim.

granted the motion and dismissed the claim, holding that 12 NYCRR 23-2.2 (a) did not apply to plaintiff's section 241 (6) claim because "the form at issue was still in the process of being created" (30 AD3d 177, 178 [2006]).

We granted plaintiff's motion for leave to appeal (8 NY3d 801 [2007]), reversed the Appellate Division order, and remitted the matter for further proceedings (9 NY3d at 51). We held that while the first sentence of section 241 (6) reiterates a common-law standard of care, the second sentence requires owners and contractors to comply with the Commissioner of Labor's rules (9 NY3d at 50), and where such a rule or regulation imposes a "specific, positive command[ ]," owners and contractors are subject to a nondelegable duty (*id.*, quoting *Allen v Cloutier Constr. Corp.*, 44 NY2d 290, 297 [1978]). We found a specific requirement in section 12 NYCRR 23-2.2 (a) which mandates that "forms" be "braced or tied together so as to maintain position and shape" (9 NY3d at 50).

We concluded that the Appellate Division should not have granted summary judgment based on the record as then developed. While the interpretation of the regulation presented a question of law, we determined that "the meaning of specialized terms in such a regulation is a question on which a court must sometimes hear evidence before making its determination" (*id.* at 51, citing *Millard v City of Ogdensburg*, 274 AD2d 953, 954 [4th Dept 2000]), and remitted the matter to Supreme Court for a framed-issue hearing on whether "the words of the regulation can sensibly be applied to anything but completed forms" (9 NY3d at 51).

At the hearing before Supreme Court, the parties introduced expert testimony on how forms are assembled, and how component parts and completed forms are stabilized and secured at construction sites. Defendants introduced the testimony of a structural engineer, with 30 years' experience, who described a concrete form as "an assembly of all kinds of components" including form panels, and defined a brace as "a structural element" used to hold "the form in place so it won't move and shift." He also testified that a form wall must be secured in order to resist the impact of wind loads. On cross-examination, he testified that in addition to wind loads, forms must resist other types of impact, including human contact like being bumped by a worker. He admitted that the first side of a form that is put up, called the back component of the form, could be braced in order to prevent it from falling, and that braces can be installed when the back wall is raised.

Plaintiff introduced testimony of two experts, one a civil engineer with a Master's degree in transportation engineering, and the other, a carpenter with over 20 years of experience working on construction involving concrete form work. Plaintiff's engineer testified that it was important to brace forms because they needed support to withstand the impact of wind loads that might "turn the wall over," and that bracing was necessary to resist the impact of vibrations common to construction sites. He testified that once a form wall goes up "you would have to brace it because it could be inherently unstable at that point," because of blowing wind, bumping, and vibrations. In describing bracing during the assembly process, he testified that as a wall goes up it is braced, and the bracing "would run from the wall of the form . . . diagonal[ly] down to the ground." Plaintiff's carpenter expert testified that a brace ensures that a wall does not fall over, and that braces could run from the top of the form and be bolted or nailed to concrete blocks. At the conclusion of the expert's testimony, the court permitted plaintiff to testify briefly about the nature of the object that fell on his hand, which he described as 30 feet by 30 feet.

Supreme Court thereafter granted defendants' summary judgment motion and dismissed plaintiff's section 241 (6) claim. The court concluded that the back form wall was part of an entire form, and as such did not come within the coverage of the regulation or section 241 (6). Plaintiff appealed.

The Appellate Division, with one Justice dissenting, reversed on the law, and, upon a search of the record, granted summary judgment to plaintiff (98 AD3d at 841). According to the majority, the expert testimony showed that the regulation could apply to forms as they were being constructed, and that a back form must be braced to maintain its position. The majority held that erection of the back form wall is the first step in the process of bracing and/or tying a form, such that it would defy common sense to maintain that the entire form could be structurally safe and maintain its "position and shape" pursuant to 12 NYCRR 23-2.2 (a) without a proper brace (*id.* at 842). Justice Presiding Tom dissented, and argued, inter alia, that the focus of 12 NYCRR 23-2.2 (a) "is the structural integrity of the form during the placement of concrete" (*id.* at 845), and that the expert testimony was consistent with this interpretation. Defendants now appeal pursuant to leave granted by the Appellate Division (2013 NY Slip Op 60455[U] [1st Dept 2013]).

## II.

Labor Law § 241 (6) states that

> "[a]ll areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work, except owners of one and two-family dwellings who contract for but do not direct or control the work, shall comply therewith."

The legislative intent of section 241 (6) is to ensure the safety of workers at construction sites (*Nagel v D & R Realty Corp.*, 99 NY2d 98, 102 [2002] ["That the Legislature sought to protect workers from industrial accidents specifically in connection with construction, demolition or excavation work is, therefore, patent"]). As we stated in our 2007 opinion, the statute sets forth the common-law standard of care and mandates compliance with the Commissioner of Labor's rules, including any nondelegable duty imposed on owners and contractors set forth in those rules (9 NY3d at 50). We found such nondelegable duty in the mandate set forth in 12 NYCRR 23-2.2 (a) that "forms" be "braced or tied together so as to maintain position and shape" (*id.*), and concluded the record needed further development to determine the applicability of the regulation to plaintiff's case (*id.* at 51).

On this appeal, following the framed-issue hearing and opinions of Supreme Court and the Appellate Division on the legal question of the applicability of 12 NYCRR 23-2.2 (a) to plaintiff's case, defendants reassert their argument with renewed vigor that the regulation applies only to completed forms, and not to the back form wall which caused plaintiff's injuries. According to defendants, the operative regulatory language that imposes more than a general duty of care requires that forms "shall be properly braced or tied together to maintain position and shape," and the expert testimony established that this requirement cannot sensibly be applied to one side of a form standing on its own because it has no shape to maintain. Defendants contend this is the only plausible reading of 12

NYCRR 23-2.2 (a) because the regulation is intended to address the dangers associated with the "blow out" or collapse of a form containing liquid concrete. Plaintiff, in turn, argues no less vigorously that the experts made clear that the bracing required by 12 NYCRR 23-2.2 (a) may be applied to a single form wall for purposes of ensuring worker safety and to maintain the form wall's position and shape. Any other reading, plaintiff argues, is nonsensical because of the danger posed to workers from the hoisting of a single form wall to a vertical position during the assembly of the form, and the wall's vulnerability to collapse from a variety of construction site events.

The testimony adduced at the framed-issue hearing establishes that the object that fell on plaintiff was a back wall panel, which was a component of a form under assembly at the time of the injury, and that the back wall is the type of component which can be subjected to the requirements of 12 NYCRR 23-2.2 (a).[2] The experts testified that a back wall must be braced once it is hoisted up to a vertical position in order to withstand the impact of external as well as internal conditions on the wall. They testified that a brace could be installed when a back wall is hoisted in order to stabilize it specifically against collapse from the external condition of wind loads. Defendants' expert testified that wind loads are "part of the loads that the form assembly has to resist," and that braces could be installed when the first wall (the back wall) is put up. He further testified that once the wall is raised it could maintain this position by placement of a brace that prevents the back wall from falling.

Plaintiff's engineer testified that a form wall must be braced otherwise it topples over, and that the only way to prevent a wall from turning over from a wind load blowing on it is "by having a brace." He also testified that once the back wall goes up it is braced, and that both walls did not need to be in place to install a brace. Moreover, he testified that, once up, the wall may be standing for some period, possibly up to days at a time, before the form is completed, a reality of construction work also

---

**2.** Our dissenting colleague argues that the regulation does not apply here because the framed-issue hearing testimony establishes that a "form" commonly refers to a completed form. However, in 2007 we stated that the object that injured plaintiff "was not a completed form, but was part or all of one of a form's sides" (9 NY3d at 49). We remitted for a framed-issue hearing not to determine whether the object constitutes a completed form, but to determine whether the regulation could "sensibly be applied to anything but completed forms" (*id.* at 51). Upon reviewing the testimony of the framed-issue hearing, we believe that it can.

admitted by defendants' expert. Plaintiff's carpenter expert re-iterated the importance of bracing before the front wall is attached, in order to keep the wall from falling.

Despite the expert testimony supporting the application of the regulation to other than completed forms, defendants argue that the regulation's subdivision (b), titled "Inspection," which requires that certain designated persons make continuous inspections to ensure "the stability of all forms, shores and re-shores including all braces and other supports *during the placing of concrete*," similarly limits the mandatory bracing and tying requirement of subdivision (a) to completed forms (12 NYCRR 23-2.2 [b] [emphasis added]). Defendants' argument is unpersuasive. The ongoing inspection requirement contained in subdivision (b), applicable only to periods of the "placing of concrete," merely recognizes that during this stage of concrete work, the stability of the form is specially vulnerable and requires particular attention, as noted by its other requirement that "[a]ny unsafe condition shall be remedied immediately" (*id.*). Interpreting the regulation as defendants suggest would result in diminished protections for workers during the assembly of forms, as compared with the concrete pouring process stage of the work, a reading of the regulation that runs counter to its text and undermines the legislative intent to ensure worker safety.

The expert testimony supports the conclusion that the language of 12 NYCRR 23-2.2 (a) can sensibly be applied to other than a completed form, and may apply to a wall component. Therefore, the Appellate Division properly reversed Supreme Court's order and, moreover, did not abuse its discretion as a matter of law by granting summary judgment to plaintiff (*see generally Merritt Hill Vineyards v Windy Hgts. Vineyard*, 61 NY2d 106, 111 [1984]; *see also* CPLR 3212 [b]).

Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

PIGOTT, J. (dissenting). Plaintiff's Labor Law § 241 (6) claim hinges on defendants' alleged violation of 12 NYCRR 23-2.2 entitled "concrete work" and specifically subdivision (a) thereof, which states, as relevant here, that "[f]orms . . . shall be structurally safe and shall be properly braced or tied together so as to maintain position and shape." When this case was before us in 2007 (9 NY3d 47 [2007]), we concluded that the words

"braced or tied together so as to maintain position and shape" were specific enough to establish liability under section 23-2.2 (a), but that a "more complete record" was necessary concerning "the nature of the object that caused the injury and the opinions of those expert in the construction of concrete walls as to whether the words of the regulation can sensibly be applied to anything but completed forms" (*id.* at 50-51).

The testimony at the "framed issue" hearing was clear that a form was just that, a completed form; and that the regulation could not be reasonably interpreted as applying to anything but completed forms. For that reason, I dissent and would answer the certified question in the negative.

On its face, the aim of the regulation at issue is to ensure the structural integrity of "forms" that have been assembled as part of the concrete work. Even plaintiff's expert conceded that forms are constructed by erecting a "form wall," placing rebar in the middle, erecting a back form wall and then tying it together. He further explained that whenever concrete is poured, it must be poured into a form.

It is of no moment that both sides' experts agreed that a form "wall" should be braced before the form is completed to ensure that it does not tip over during the process of constructing the form. The issue is not whether such bracing *should* be used to support a form "wall" or whether such bracing *could* be utilized as such support but, rather, whether section 23-2.2 (a) was designed to address the bracing of a form wall in the first place. In my view, the majority's interpretation expands the reach of the regulation to include the bracing of an object, i.e., a form "wall" that is absent from the regulation, which directs that "forms" (and not a form wall) "be properly braced or tied together."

Simply put, although plaintiff may have been struck by a form "wall," he was not injured by a "form" and, more specifically, was not the victim of a type of accident this section was designed to prevent.* Had the regulation required that a form "wall" be braced "so as to maintain position and shape"—as the majority claims it should be interpreted—then that interpretation would be consistent with the regulation's directives. But a cursory glance at the regulation provides the answer:

---

* Plaintiff asserted another cause of action under the Labor Law that may have been more appropriate, but he stipulated to its discontinuance (*see* Labor Law § 240).

*"Forms* . . . shall be properly braced or tied together so as to maintain position and shape." Once the forms are erected, they are ready for a concrete pour, but that does not necessarily mean that the concrete will be ready for pouring at that moment. The regulation is there to ensure that such forms maintain their position and shape both before and during the pour, which can be done through either bracing or tying together. 12 NYCRR 23-2.2 (b) underscores that the regulation as a whole applies to completed forms, as it provides that "the stability of all forms . . . including all braces and other supports" must be continuously inspected "during the placing of concrete." Indeed, section 23-2.2 (b) and section 23-2.2 (a) can be read in tandem as applying to completed forms; the latter provision requires that forms be braced or tied together even before the concrete pour (so as to protect against wind loads and vibrations), while the former provision affords protection to workers against the increased load on the forms by the liquid concrete. Because the majority interprets section 23-2.2 (a) in an extremely broad manner that finds no support in the testimony presented by the experts, I respectfully dissent.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH and ABDUS-SALAAM concur with Judge RIVERA; Judge PIGOTT dissents in an opinion.

Order affirmed, with costs, and certified question answered in the affirmative.