## Saquisili v Harlem Urban Dev. Corp.

2024 NY Slip Op 33436(U)

September 27, 2024

Supreme Court, New York County

Docket Number: Index No. 156061/2019

Judge: Verna L. Saunders

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

| | |
|---|---|
| PRESENT:    **HON. VERNA L. SAUNDERS, JSC** | PART   36 |
| *Justice* | |

-----------------------------------------------------------------------X

JUAN GUZMAN SAQUISILI,

                Plaintiff,

          - v -

HARLEM URBAN DEVELOPMENT CORPORATION a/k/a
HARLEM COMMUNITY DEVELOPMENT CORPORATION,
NEW YORK STATE URBAN DEVELOPMENT
CORPORATION d/b/a EMPIRE STATE DEVELOPMENT
CORPORATION, EMPIRE STATE DEVELOPMENT
CORPORATION, 223 WEST 125th STREET DANFORTH LLC,
and FLINTLOCK CONSTRUCTION SERVICES LLC,

                Defendants.

------------------------------------------------------------------------X

HARLEM URBAN DEVELOPMENT CORPORATION i/s/h/a
HARLEM URBAN DEVELOPMENT CORPORATION a/k/a
HARLEM COMMUNITY DEVELOPMENT CORPORATION,
NEW YORK STATE URBAN DEVELOPMENT CORPORATION
d/b/a EMPIRE STATE DEVELOPMENT CORPORATION,
EMPIRE STATE DEVELOPMENT CORPORATION, 223 WEST
125TH STREET DANFORTH LLC i/s/h/a 223 WEST 125th STREET
DANFORTH, LLC, and FLINTLOCK CONSTRUCTION
SERVICES LLC,

                Third-Party Plaintiffs,

        -against-

SKY MATERIALS CORP.,

                Third-Party Defendant.

------------------------------------------------------------------------X

**INDEX NO.**      156061/2019

**MOTION SEQ. NO.**     004

**DECISION + ORDER ON
MOTION**

Third-Party
Index No. 595074/2020

The following e-filed documents, listed by NYSCEF document number (Motion 004) 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 143, 144, 145, 146, 147, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 164, 165, 166, 167

were read on this motion to/for          **SUMMARY JUDGMENT**         .

      Plaintiff Juan Guzman Saquisili brings this action to recover damages for personal injuries allegedly sustained on September 20, 2018 while working at a new building under construction located at 233 West 125th Street, New York, New York. Defendants/third-party plaintiffs Harlem Community Development Corporation i/s/h/a Harlem Urban Development Corporation a/k/a Harlem Community Development Corporation (HCDC), New York State Urban Development Corporation d/b/a Empire State Development Corporation, Empire State Development Corporation (together with New York State Urban Development Corporation, EDC), 223 West 125th Street Danforth, LLC (Danforth), and Flintlock Construction Services

LLC (Flintlock) (collectively, defendants) move, pursuant to CPLR 3212, for: (1) summary judgment dismissing plaintiff's Labor Law §§ 200, 240(1), 241(6) and common-law negligence claims; (2) summary judgment on their claims for contractual indemnification and breach of contract for failure to procure insurance against third-party defendant Sky Materials Corp. (Sky); and (3) summary judgment dismissing all cross-claims asserted against them.

The facts underlying this action were discussed in a prior decision and order of this court (*Saquisili v Harlem Urban Dev. Corp.*, 2023 NY Slip Op 33191[U] [Sup Ct, NY County, Sept. 14, 2023]), with which familiarity is presumed. Briefly, HCDC, a subsidiary of EDC (NYSCEF Doc. No. 118, *Matcovich affirmation, exhibit B at 1*), owns the property located at 233 West 125th Street in New York County (NYSCEF Doc. No. 135, *Matcovich affirmation, exhibit S*). In August 2015, HCDC, as landlord, leased the property to Danforth and non-party Victoria Theater Housing Development Fund Corp., together as tenants (NYSCEF Doc. No. 136, *Matcovich affirmation, exhibit T*). Danforth sought to develop the property into two new mixed-use buildings and retained Flintlock as its construction manager for the project (NYSCEF Doc. No. 137, *Matcovich affirmation, exhibit U* ["Flint Contract"] at 4). Flintlock subcontracted the excavation, foundation, and superstructure work on the project to Sky (NYSCEF Doc. No. 124, *Matcovich affirmation, exhibit H, Manuel De La Vega (De La Vega) tr at 46-47*; NYSCEF Doc. No. 134, *Matcovich affirmation, exhibit R* ["Sky Subcontract"]). "Sky Structures Corp." employed plaintiff as a carpenter (NYSCEF Doc. No. 138, *Matcovich affirmation, exhibit V, ¶ 7*).

Plaintiff had been building concrete decks on the project for three to four weeks when the accident occurred (NYSCEF Doc. No. 121, *Matcovich affirmation, exhibit E, plaintiff 12/8/2020 tr at 95*; NYSCEF Doc. No. 123, *Matcovich affirmation, exhibit G, plaintiff 2/13/2021 tr at 361*). His work entailed preparing wood forms for the new floors (NYSCEF Doc. No. 121 at 64-65 and 93-95; NYSCEF Doc. No. 122, *Matcovich affirmation, exhibit F, plaintiff 1/6/2021 tr at 151-152 and 168-169*). On the day of the accident, plaintiff had been paired with a co-worker, Lisandro Pico (Pico), to work on the sixth or seventh floor (NYSCEF Doc No. 121 at 95; NYSCEF Doc No. 122 at 148). Plaintiff was wearing a harness and Sky had given him a "yo-yo," but he had no place to "tie it off" (NYSCEF Doc. No. 122 at 156, 171 and 181-182).

Prior to the date of the accident, Sky's carpenters created a three-foot wide by three-foot deep opening in the deck to accommodate a metal beam to be installed later[1] (NYSCEF Doc. No. 122 at 153-154 and 200-201). To reach the area where he and Pico were working, plaintiff had to cross over the uncovered, unguarded beam pocket (NYSCEF Doc. No. 122 at 209; NYSCEF Doc. No. 123 at 375-376). There were no planks placed over the pocket he could use to cross (NYSCEF Doc. No. 122 at 200). Plaintiff explained, "I would have to stretch my leg over to pass, to cross over it" (*id.*), "this is three feet; I could easily go over it" (*id.*), and "all I do was stretch out my leg" and step over the opening (NYSCEF Doc. No. 123 at 376). Plaintiff had passed over the opening four to five times before the accident without encountering any issues (*id.* at 376-377).

---

[1] In the photographs submitted on the motion, the opening, referred to as a "beam pocket," resembles a square-shaped open channel or trench running the length of the deck (NYSCEF Doc. No. 131, *Matcovich affirmation, exhibit O*).

**156061/2019  SAQUISILI, JUAN GUZMAN vs. HARLEM URBAN DEVELOPMENT**
Motion No. 004

Page 2 of 12

[* 2]

Plaintiff testified that at the time of the accident, he was carrying supplies to the area where he and Pico had been working when he tripped on a thick metal rod or wire protruding from a two-foot by two-foot, L-shaped metal plate used in erecting the perimeter fence around the deck (NYSCEF Doc. No. 122 at 179, 183-184, 186-187, 197-198; NYSCEF Doc. No. 123 at 367, 369 and 371). Plaintiff had earlier observed similar metal pieces strewn about the deck (NYSCEF Doc. No. 122 at 189 and 195) and stated those were "left as extra pieces … [and] had to be removed each night and put aside; but that was not done" (*id.* at 188). The metal item was located one to two feet from the beam pocket (*id.* at 197; NYSCEF Doc. No. 123 at 371). The metal pieces "were there for days" (NYSCEF Doc. No. 123 at 377), though he was unsure "that it was exactly the same piece that was there. Remember, there are a lot of those pieces that are there" (*id.* at 378). When plaintiff tripped, he fell into a "scissor-like position. My right leg was inside the opening, and my left foot was out, and half my body was in [the beam pocket]" (NYSCEF Doc. No. 122 at 206).

De La Vega, Flintlock's project manager for this project, testified that Flintlock did not control the means of methods of a subcontractor's work, though it retained the authority to stop work if such work was not performed in compliance with safety requirements or the building code (NYSCEF Doc. No. 124 at 30). According to a daily log sheet from the day of the accident, Sky was working on the sixth-floor deck (*id.* at 65-66). De La Vega testified that if a worker was working in the middle or center of the sixth-floor deck, "[t]here is nowhere for them to really … tie off" (*id.* at 93). He further testified that a worker could "[tie off] above or laterally and they would generally have to do so on a slab edge. There would be somewhere for them to tie off on an open deck, and if they are in the center, no, there would be no requirement" (*id.*).

De La Vega described a "beam pocket" as "a depression in the deck to install a concrete beam that supports a span of concrete. It is usually tide [sic] into columns and is part of the structure" (*id.* at 67). The two sides and bottom of the pocket are lined with wood, and the bottom is supported by a "temporary structure … made of metal stanchions" (*id.* at 87). Sky was responsible for ensuring that the beam pockets were covered with two-foot by four-foot plywood sheets or enclosed by a railing to prevent someone from falling into the opening (*id.* at 77-79, 90 and 103). In this instance, a railing would have been preferred over a covering if work needed to be completed in the beam pocket (*id.* at 90). A harness and a yo-yo would not prevent a worker from falling into a three-foot-by-three-foot beam pocket because a harness is meant to arrest a fall of a distance greater than six feet (*id.* at 94).

De La Vega testified that the New York City Department of Buildings (DOB) issued two summonses and a partial stop work order for concrete operations after the accident (*id.* at 77 and 101), except for work on stairs below the working deck (*id.* at 82). To lift the stop work order and cure the violation, Sky produced a written "means and methods" document (*id.* at 82-83). As for the accident, De La Vega was not aware of any witnesses and had not seen any witness statements (*id.* at 102). He stated that he had no knowledge of whether plaintiff had been instructed to use a particular safety device, whether plaintiff had refused to use or had misused a safety device, or whether plaintiff had been told that he should not be working in a particular area (*id.* at 106).

156061/2019 SAQUISILI, JUAN GUZMAN vs. HARLEM URBAN DEVELOPMENT
Motion No. 004

Page 3 of 12

Plaintiff's complaint, filed on June 18, 2019, pleads two causes of action for: (1) common-law negligence and (2) alleged violations of Labor Law §§ 200, 240(1), and 241(6). As is relevant here, defendants alleged as a first affirmative defense that "plaintiff acted as a recalcitrant worker at the time and place of the subject accident and at other relevant times at the subject job site and additionally, plaintiff's conduct was the sole proximate cause of the happening of his accident" (NYSCEF Doc. No. 118, *Matcovich affirmation, exhibit B at 3*).

Defendants commenced a third-party action against Sky asserting three causes of action for: (1) contractual indemnification; (2) common-law indemnification and/or contribution; and (3) breach of contract for failure to procure insurance. Sky interposed a single counterclaim alleging that plaintiff's injuries were caused, in whole or in part, by defendants' negligence in its answer.

By notice of motion dated September 29, 2021, defendants moved under CPLR 3124 and 3126 to strike Sky's answer and/or preclude Sky from offering evidence at the time of trial or, in the alternative, to compel Sky to produce a witness for deposition and respond to their discovery demands (NYSCEF Doc. No. 55). Defendants and Sky resolved the motion by stipulation dated January 13, 2022, under which Sky agreed that it was precluded from testifying at the time of trial and from producing and/or relying on an affidavit from a past or present Sky employee in support of or in opposition to any dispositive motion in this action (NYSCEF Doc. No. 86).

In a decision and order dated September 14, 2023, this court denied plaintiff's motion for partial summary judgment on the issue of defendants' liability on his Labor Law §§ 240(1) and 241(6) claims. Regarding the Labor Law § 240(1) claim, triable issues of fact as to whether the floor deck should have been covered and whether the beam pocket into which plaintiff fell posed an elevation-related risk precluded granting the motion (*Saquisili*, 2023 NY Slip Op 33191[U], *6). Triable issues of fact whether covering the beam pocket would have been inconsistent with the work taking place on the date of the accident and whether metal debris could have caused the accident precluded granting plaintiff partial summary judgment on his Labor Law § 241(6) claim predicated on Industrial Code (12 NYCRR) §§ 23-1.7(b)(1)(i) and 23-1.7(e)(2) (*id.* at 7).

Defendants now move for summary judgment dismissing plaintiff's complaint, relying on deposition transcripts, the Sky Subcontract, photographs of the project site, and insurance coverage letters, among other exhibits. Plaintiff opposes the motion and submits a sworn statement from Pico, DOB's post-incident records, a photograph of plaintiff, and a copy of his earlier summary judgment motion, without exhibits. Sky has not submitted any opposition.

It is well-settled that "the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). The "facts must be viewed in the light most favorable to the non-moving party" (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012] [internal quotation marks and citation omitted]). If the moving party fails to meet its prima facie burden, the motion must be denied without regard to the sufficiency of the opposing papers (*Alvarez*, 68 NY2d at 324). If the moving party meets its prima facie burden, the non-moving party must furnish evidence in admissible form sufficient to raise a material issue of fact (*id.*). "[M]ere conclusions,

156061/2019 SAQUISILI, JUAN GUZMAN vs. HARLEM URBAN DEVELOPMENT
Motion No. 004

Page 4 of 12

expressions of hope or unsubstantiated allegations or assertions are insufficient" (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

Defendants contend that photographs of the project site depict a wood plank placed over the open beam pocket, thereby offering plaintiff a safe way to traverse the unguarded opening. Defendants posit that plaintiff chose not to use the plank available to him, and thus, the Labor Law § 240(1) claim should be dismissed based on their sole proximate cause defense. Plaintiff counters that defendants have failed to carry their prima facie burden of demonstrating that plaintiff was a recalcitrant worker or the sole proximate cause of the accident.

"Labor Law § 240(1) imposes a nondelegable duty and absolute liability upon owners and contractors for failing to provide safety devices necessary for workers subjected to elevation-related risks in circumstances specified by the statute" (*Soto v J. Crew Inc.*, 21 NY3d 562, 566 [2013]). Because the statute "was designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker *harm directly flowing from the application of the force of gravity to an object or person*" (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993]), it "applies to both 'falling worker' and 'falling object' cases" (*Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267 [2001]). However, as the Court of Appeals has explained,

> "[n]ot every worker who falls at a construction site, and not every object that falls on a worker, gives rise to the extraordinary protections of Labor Law § 240(1). Rather, liability is contingent upon the existence of a hazard contemplated in section 240(1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein" (*id.*).

While contributory negligence is not a defense to a Labor Law § 240(1) claim (*Blake v Neighborhood Hous. Servs. of City of N.Y. City*, 1 NY3d 280, 286 [2003]), a defendant cannot be held liable where the plaintiff's actions are the sole proximate cause of the accident (*id.* at 290). A defendant establishes the merits of the sole proximate cause defense by demonstrating that the "plaintiff had adequate safety devices available; that [plaintiff] knew both that they were available and that [plaintiff] was expected to use them; that [plaintiff] chose for no good reason not to do so; and that had [plaintiff] not made that choice [plaintiff] would not have been injured" (*Cahill v Triborough Bridge & Tunnel Auth.*, 4 NY3d 35, 40 [2004]).

Applying these precepts, defendants have failed to demonstrate that plaintiff's actions were the sole proximate cause of the accident. De La Vega had no personal knowledge as to whether plaintiff had been instructed to use the plank depicted in the photographs, and defendants have not offered any testimony from anyone else to establish that plaintiff had been told to do so (see *Rivera v Suydam 379 LLC*, 216 AD3d 495, 496 [1st Dept 2023]; see also *Pirozzo v Laight St. Fee Owner LLC*, 209 AD3d 596, 597 [1st Dept 2022], quoting *Mayorquin v Carriage House Owner's Corp.*, 202 AD3d 541, 542 [1st Dept 2022] [no evidence from one with "'personal knowledge of the circumstances surrounding plaintiff's work at the time of the accident'"]). More importantly, defendants have not produced any testimony from plaintiff admitting that he was aware that the plank should have been used as a means to traverse the open

156061/2019 SAQUISILI, JUAN GUZMAN vs. HARLEM URBAN DEVELOPMENT
Motion No. 004

Page 5 of 12

5 of 12

beam pocket and that he "'knew he was expected to use [the wood plank] but for no good reason chose not to do so'" (*Ortiz v City of New York*, 224 AD3d 631, 632 [1st Dept 2024], quoting *Gallagher v New York Post*, 14 NY3d 83, 88 [2010]; see also *Vitucci v Durst Pyramid LLC*, 205 AD3d 441, 444 [1st Dept 2022] [reasoning that the defendants "failed to make a showing that plaintiff deliberately refused to obey a direct and immediate instruction to use an available safety device or a standing order ... so as to invoke the recalcitrant worker defense"]). Accordingly, defendants' motion insofar as it seeks summary judgment dismissing the Labor Law § 240(1) claim is denied.

Plaintiff's verified bill of particulars alleges violations of Industrial Code (12 NYCRR) §§ 23-1.5; 23-1.7; 23-1.7 (b); 23-1.7(b)(i) and (ii); 23-1.15(a-e); 23-1.16; 23-1.16(a-f); 23-1.17 (a-e); 23-1.19(a-d); 23-1.21; 23-1.24; 23-2.4; 23-2.5; 23-2.6; 23-2.7; 23-3.3(j); 23-3.3(j)(2)(i); 23-5.1; 23-5.2; and 23-5.3 (NYSCEF Doc. No. 138, ¶¶ 16-17). Defendants are also alleged to have violated Occupational Safety and Health Administration (OSHA) regulations (*id.*, ¶ 17).

Defendants advance three grounds for dismissal of this claim. First, plaintiff's failure to identify a particular subpart or subsection of the Industrial Code warrants dismissal. Second, the Industrial Code provisions are inapplicable. Third, OSHA regulations are not proper predicates for a Labor Law § 241(6) claim. Plaintiff responds that defendants have failed to eliminate all triable issues of fact regarding 12 NYCRR 23-1.7(b)(1)(i), 23-1.7(e)(2) and 23-1.16(b).

"Labor Law § 241(6) ... imposes a *nondelegable* duty of reasonable care upon owners and contractors 'to provide reasonable and adequate protection and safety' to persons employed in, or lawfully frequenting, all areas in which construction, excavation or demolition work is being performed" (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 348 [1998]). The statute requires owners and contractors to comply with rules promulgated by the Commissioner of Labor, provided that those rules impose a "specific, positive command [ ]" (*Morris v Pavarini Constr.*, 22 NY3d 668, 671 [2014] [internal quotation marks and citations omitted]). "[T]he particular provision relied upon by a plaintiff must mandate compliance with concrete specifications and not simply declare general safety standards or reiterate common-law principles" (*Misicki v Caradonna*, 12 NY3d 511, 515 [2009]). Therefore, to prevail on a Labor Law § 241(6) claim, the plaintiff must establish that there was a violation of rule or regulation setting forth a specific standard of conduct, and that the violation was a proximate cause of the injury (*Buckley v Columbia Grammar & Preparatory*, 44 AD3d 263, 271 [1st Dept 2007], *lv denied* 10 NY3d 710 [2008]). In contrast to Labor Law § 240(1), a plaintiff's comparative or contributory negligence is a valid defense to a Labor Law § 241(6) claim (*Ross*, 81 NY2d at 502 n 4). A Labor Law § 241(6) claim may be dismissed as abandoned where the plaintiff fails to identify a specific Industrial Code subsection or subdivision (see *Caminiti v Extell W. 57th St. LLC*, 166 AD3d 440, 441 [1st Dept 2018]).

To begin, plaintiff does not oppose the dismissal of his Labor Law § 241(6) claim predicated on 12 NYCRR 23-1.5; 23-1.15; 23-1.17; 23-1.19; 23-1.21; 23-1.24; 23-2.4; 23-2.5; 23-2.6; 23-2.7; 23-3.3(j); 23-5.1; 23-5.2; and 23-5.3 (NYSCEF Doc. No. 160, *plaintiff's mem of law at 2 n 1*). In addition, plaintiff addresses only 12 NYCRR 23-1.7(b)(1)(i), 23-1.7(e)(2) and 23-1.16(b) in his opposition. Thus, plaintiff has abandoned his reliance on all other Industrial Code provisions except for 12 NYCRR 23-1.7(b)(1)(i), 23-1.7(e)(2) and 23-1.16(b) (see *Fundus*

156061/2019 SAQUISILI, JUAN GUZMAN vs. HARLEM URBAN DEVELOPMENT
Motion No. 004

Page 6 of 12

6 of 12

*v Scarola*, 214 AD3d 479, 480 [1st Dept 2023]; *Romano v New York City Tr. Auth.*, 213 AD3d 506, 508 [1st Dept 2023]). The part of plaintiff's Labor Law § 241(6) claim grounded on alleged violations of OSHA regulations is also dismissed because an OSHA regulation is not a proper predicate for Labor Law § 241(6) liability (*Alberto v DiSano Demolition Co., Inc.*, 194 AD3d 607, 608 [1st Dept 2021]; *Marl v Liro Engrs., Inc.*, 159 AD3d 688, 689 [2d Dept 2018]; *Kocurek v Home Depot, U.S.A.P.*, 286 AD2d 577, 580 [1st Dept 2001] [stating that "OSHA is inapplicable because it is limited to the safety practices of employers"]).

12 NYCRR 23-1.7(b), entitled "Falling hazards," provides, "(1) Hazardous openings. (i) Every hazardous opening into which a person may step or fall shall be guarded by a substantial cover fastened in place or by a safety railing constructed and installed in compliance with this Part (rule)." This subsection is sufficiently specific to support a Labor Law § 241(6) claim (*Alonzo v Safe Harbors of the Hudson Hous. Dev. Fund Co., Inc.*, 104 AD3d 446, 450 [1st Dept 2013]).

Contrary to defendants' contention, plaintiff's verified bill of particulars expressly alleges a violation of this section (NYSCEF Doc. No. 138, ¶ 16). Defendants are also aware of its applicability, since they cite this specific provision in their moving papers (NYSCEF Doc. No. 116, *Matcovich affirmation, ¶ 52*).

"Industrial Code (12 NYCRR) § 23-1.7(b) … applies to hazardous openings of significant depth and size" (*Lupo v Pro Foods, LLC*, 68 AD3d 607, 608 [1st Dept 2009]; see also *Marte v Tishman Constr. Corp.*, 223 AD3d 527, 529 [1st Dept 2024] ["Industrial Code § 23-1.7 (b)(1)(i) only applies to openings large enough for a person to fall completely through"]). Here, defendants maintain that photographs of the project site disprove plaintiff's account of the accident because the photographs show there was no metal debris on the ground which could have caused plaintiff to trip and fall into the opening. This argument, however, does not address whether the open, unguarded beam pocket into which plaintiff fell constitutes a "hazardous opening" within the meaning of the section. Furthermore, defendants' witness, De La Vega, testified that a railing should have been constructed around the beam pocket (NYSCEF Doc. No. 124 at 89). Assuming the beam pocket constitutes a "hazardous opening," defendants have not demonstrated whether a safety railing of the type contemplated in Section 23-1.7(b)(1)(i) should have been constructed (see *Rooney v D.P. Consulting Corp.*, 204 AD3d 428, 429 [1st Dept 2022]). Thus, defendants have failed to demonstrate that this section is inapplicable.

12 NYCRR 1.7(e)(2) concerns tripping and other hazards in "Working areas" and states that "[t]he parts of floors, platforms and similar areas where persons work or pass shall be kept free from accumulations of dirt and debris and from scattered tools and materials and from sharp projections insofar as may be consistent with the work being performed." This section is a sufficient predicate for a Labor Law § 241(6) claim (*Licata v AB Green Gansevoort, LLC*, 158 AD3d 487, 489 [1st Dept 2018]).

Defendants maintain that Section 23-1.7(e)(2) is inapplicable because photographs of the project site fail to reveal the presence on the floor of metal debris of the type described by plaintiff. They posit that plaintiff's failure to respond to their notice to admit dated October 11, 2021, in which they asked plaintiff to admit whether the attached photographs "depict[ed] the

**156061/2019 SAQUISILI, JUAN GUZMAN vs. HARLEM URBAN DEVELOPMENT**
Motion No. 004

**Page 7 of 12**

7 of 12

project site at 233 West 125th Street ... on September 20, 2018" (NYSCEF Doc. No. 131, *Matcovich affirmation, exhibit O*, ¶¶ 4, 5, 6, 7, 8, and 9), constitutes an admission.[2]

"A notice to admit is intended to garner admissions regarding facts 'as to which the party requesting the admission reasonably believes there can be no substantial dispute'" (*Marchese v Aston*, 200 AD3d 531, 532 [1st Dept 2021], quoting CPLR 3123[a]). "[A] notice to admit may not be utilized to request admission of material issues or ultimate or conclusory facts" (*Taylor v Blair*, 116 AD2d 204, 206 [1st Dept 1986]). In this case, whether metal pieces of the type described at plaintiff's deposition were scattered on the ground and whether one of those metal pieces caused plaintiff to trip is beyond the proper scope of a notice to admit. Moreover, as has previously been determined, "[g]iven the conflicting claims about whether the metal debris caused plaintiff's accident at the site, any determination would be based on the credibility of the parties, and credibility determination is not appropriate on a motion for summary judgment" (*Saquisili*, 2023 NY Slip Op 33191[U], *7). The motion insofar as it seeks dismissal of the Labor Law § 241(6) claim based on Section 23-1.7(e)(2) is denied.

12 NYCRR 23-1.16 governs "Safety belts, harnesses, tail lines and lifelines," and reads, in relevant part, as follows:

> "(b) Attachment required. Every approved safety belt or harness provided or furnished to an employee for his personal safety shall be used by such employee in the performance of his work whenever required by this Part (rule) and whenever so directed by his employer. At all times during use such approved safety belt or harness shall be properly attached either to a securely anchored tail line, directly to a securely anchored hanging lifeline or to a tail line attached to a securely anchored hanging lifeline. Such attachments shall be so arranged that if the user should fall such fall shall not exceed five feet."

This section is sufficiently specific to support a Labor Law § 241(6) claim (*Anderson v MSG Holdings, L.P.*, 146 AD3d 401, 404 [1st Dept 2017]).

Here, defendants have failed to dispel all material issues of fact as to whether a violation of Section 1.16(b) occurred (see *Badzio v East 68th St. Tenants Corp.*, 2020 NY Slip Op 32885[U], *30 [Sup Ct, NY County 2020], *affd* 200 AD3d 591 [1st Dept 2021]. Plaintiff testified that he had no place to tie off his harness and yo-yo, and the fact that the "'approved safety belt or harness' was not 'properly attached either to a securely anchored tail line, directly to a securely anchored hanging lifeline or to a tail line attached to a securely anchored hanging lifeline'" can constitute a violation (see *Jerez v Tishman Constr. Corp. of N.Y.*, 118 AD3d 617, 618 [1st Dept 2014]).

---

[2] Defendants raised this same argument about the same notice to admit in their opposition to plaintiff's earlier motion for partial summary judgment (NYSCEF Doc. No. 158, *Freund affirmation, exhibit 5 at 34*).

**156061/2019 SAQUISILI, JUAN GUZMAN vs. HARLEM URBAN DEVELOPMENT**
Motion No. 004

Page 8 of 12

8 of 12

[* 8]

In his opposition to the motion, plaintiff consents to the dismissal of his Labor Law § 200 and common-law negligence claims (NYSCEF Doc. No. 160 at 2 n 1). Accordingly, the Labor Law § 200 and common-law negligence claims pled against defendants are dismissed.

Defendants argue that they are entitled to contractual indemnification from Sky based on the following provision in Article 13.5 of the Sky Subcontract, which reads:

> "HOLD HARMLESS: To the fullest extent permitted by law, the Subcontractor hereby assumes the entire responsibility and liability for any and all injury to or death of any and all persons, including the Owner's, Construction Manager's and Subcontractors employees … caused by or resulting from or arising out of any act or omission on the part of the Subcontractor in connection with this Agreement, or of the prosecution of the work hereunder, and this clause shall be made part of all contracts with Sub-Subcontractors or Materials Suppliers and the Subcontractor shall save and hold harmless the Owner, Construction Manager and the Additional Insureds listed on Exhibit A from and against any and all loss and/or expense which they may suffer or pay as a result of claims or suits due to, because of or arising out of any and all such injuries, deaths and/or damage and the Subcontractor, if requested, shall assume and defend, at his own expense, any suit, action or other legal proceedings arising therefrom, including but not limited to:
>
> (a) any bodily injury… of any person … occurring in connection with, or arising out of, or resulting from the acts or omissions or the breach of obligations under this Agreement or failure to comply with laws by the Subcontractor or its employees" (NYSCEF Doc. No. 134 at 18).

"When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed" (*Hooper Assoc. v AGS Computers*, 74 NY2d 487, 491 [1989]). "[T]he 'intention to indemnify [must] be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances'" (*Drzewinski v Atlantic Scaffold & Ladder Co.*, 70 NY2d 774, 777 [1987], quoting *Margolin v New York Life Ins. Co.*, 32 NY2d 149, 153 [1973]).

General Obligations Law § 5-322.1(1) imposes restrictions on the scope of contractual indemnification provisions and provides that agreements "purporting to indemnify or hold harmless the promisee against liability for damage . . . caused by or resulting from the negligence of the promisee . . . whether such negligence be in whole or in part, is against public policy and is void and unenforceable." Thus, the statute prohibits contractual agreements that provide for full indemnification regardless of the indemnitee's fault (see *Itri Brick & Concrete Corp. v Aetna Cas. & Sur. Co.*, 89 NY2d 786, 796 [1997], *rearg denied* 90 NY2d 1008 [1997]). If an indemnification provision includes language limiting the indemnitor's obligation, though, then

156061/2019 SAQUISILI, JUAN GUZMAN vs. HARLEM URBAN DEVELOPMENT
Motion No. 004

Page 9 of 12

9 of 12

there is no violation of General Obligations Law § 5-322.1(1) (*Brooks v Judlau Contr. Inc.*, 11 NY3d 204, 210 [2008] [finding that the phrase "'to the fullest extent permitted by law …'" contemplates partial indemnification and is intended to limit [a subcontractor's] contractual indemnity obligation solely to [the subcontractor's] own negligence"]). To prevail on a claim for contractual indemnification, "the one seeking indemnity need only establish that it was free from any negligence and was held liable solely by virtue of the statutory liability. Whether or not the proposed indemnitor was negligent is a non-issue and irrelevant" (*Correia v Professional Data Mgt., Inc.*, 259 AD2d 60, 65 [1st Dept 1999]).

The contract provision herein broadly provides for indemnification for any claims arising out of Sky's work and, as is the case here, "[t]he contract's broad indemnification provision was triggered by plaintiff's accident in the course of Sky's work" (*Asian v Flintlock Constr. Servs., LLC*, 225 AD3d 462, 463 [1st Dept 2024]; *Pimentel v DE Frgt. LLC*, 205 AD3d 591, 594 [1st Dept 2022]; *Rudnitsky v Macy's Real Estate, LLC*, 189 AD3d 490, 492 [1st Dept 2020]). It is undisputed that Sky employed plaintiff when the accident occurred, and that he was injured during the course of his employment with Sky.

Furthermore, the indemnification provision at issue contains the savings language "[t]o the fullest extent permitted by law" (NYSCEF Doc. No. 134 at 18). Consequently, the provision does not violate General Obligations Law § 5-322.1(1) (see *Munio v JDS Seagirt LLC*, 227 AD3d 547, 548 [1st Dept 2024]). Plaintiff has consented to the dismissal of his Labor Law § 200 and common-law negligence claims against defendants, and defendants' liability to plaintiff on his Labor Law §§ 240(1) and 241(6) claims, if any, would be purely vicarious. Thus, defendants are entitled to contractual indemnity from Sky (see *O'Leary v S&A Elec. Contr. Corp.*, 149 AD3d 500, 502-503 [1st Dept 2017] ["given the unchallenged dismissal of the common-law negligence claim," owner granted contractual indemnification]; *Nazario v 222 Broadway, LLC*, 135 AD3d 506, 510 [1st Dept 2016], *affd as mod* 28 NY3d 1054 [2016] [granting contractual indemnification where Labor Law § 200 and common-law negligence claims dismissed]; *Quiroz v Wells Reit-222 E. 41st St., LLC*, 128 AD3d 442, 443 [1st Dept 2015] [grant of partial summary judgment on the Labor Law § 241(6) claim to plaintiff did not preclude defendants from obtaining full contractual indemnity since their liability was purely vicarious]). Therefore, that branch of the motion seeking summary judgment on defendants/third-party plaintiffs' contractual indemnification against third-party defendant Sky Materials Corp is granted.

Regarding defendants' request for attorneys' fees, defendants have failed to demonstrate that the indemnification provision in the Sky Subcontract "contain[s] 'unmistakably clear' language of the parties' intent to encompass [the reimbursement of attorneys' fees]" (*Sage Sys., Inc. v Liss*, 39 NY3d 27, 31 [2022], quoting *Hooper Assoc.*, 74 NY2d at 492). The subject provision provides for indemnity "from and against any and all loss and/or expense which [the indemnitees] may suffer or pay as a result of claims or suits" (NYSCEF Doc. No. 134 at 18). Despite this broad wording, the provision does not expressly reference attorneys' fees (*compare Sage Sys., Inc.*, 39 NY3d at 33 [reasoning that an agreement providing for indemnity "'from and against any and all claims, demands, liabilities, costs, damages, expenses and causes of action'" lacked explicit language or a clear intent to cover attorneys' fees] with *Ging v F.J. Sciame Constr. Co., Inc.*, 2020 NY Slip Op 30055[U], *35, 38 [Sup Ct, NY County 2020], *affd* 193

156061/2019 SAQUISILI, JUAN GUZMAN vs. HARLEM URBAN DEVELOPMENT
Motion No. 004

Page 10 of 12

AD3d 415 [1st Dept 2021] [awarding an indemnitee expenses and attorneys' fees where the contract provision provided for indemnity "'from and against all claims, damages, losses and expenses, including but not limited to attorneys' fees arising out of or resulting from the work of [the indemnitor]'"]). Defendants' motion insofar as it seeks reimbursement of their attorneys' fees is denied.

Defendants move for summary judgment in their favor on the third cause of action for breach of contract based on Sky's alleged failure to procure insurance naming them additional insures on a comprehensive general liability insurance policy.

"'A party moving for summary judgment on its claim for failure to procure insurance meets its prima facie burden by establishing that a contract provision requiring the procurement of insurance was not complied with'" (*Dorset v 285 Madison Owner LLC*, 214 AD3d 402, 404 [1st Dept 2023], quoting *Benedetto v Hyatt Corp.*, 203 AD3d 505, 506 [1st Dept 2022]). The moving party may meet its prima facie burden "by submitting … copies of the contract requiring the procurement of insurance and of correspondence from the insurer of the party against whom summary judgment is sought indicating that the moving party was not named as an insured on any policies issued" (*Dorset*, 214 AD3d at 404, citing *DiBuono v Abbey, LLC*, 83 AD3d 650, 652 [2d Dept 2011]).

Here, defendants have failed to satisfy their prima facie burden (see *Dorset*, 214 AD3d at 404). The Sky Subcontract, which incorporated the requirements applicable to subcontractors under the Flint Contract, obligated Sky to purchase and maintain insurance naming defendants as additional insureds (NYSCEF Doc. No. 134 at 2, 18, 168-169, 201 and 335). Defendants contend that Sky's insurance carrier has failed to provide them with unconditional additional insured coverage. In support, defendants tender a letter from counsel for Sky's insurance carrier, Accredited Surety and Casualty Company, Inc. ("Accredited") dated August 17, 2022, which reads, in pertinent part, that "Accredited agrees to accept the defense and indemnity of [defendants] as additional insureds under the Policy, on a primary and non-contributory basis" (NYSCEF Doc. No. 139, *Matcovich affirmation, exhibit W at 1-2*). Counter to defendants' assertion, it appears from Accredited's letter that Sky complied with the insurance requirements set forth in the Sky Subcontract by obtaining an insurance policy naming defendants as additional insureds (see *Payne v NSH Community Servs., Inc.*, 203 AD3d 546, 548 [1st Dept 2022]). That Accredited reserved their rights under the policy does not warrant a different result (see *Dorset*, 214 AD3d at 404, citing *Perez v Morse Diesel Intl., Inc.*, 10 AD3d 497, 498 [1st Dept 2004]). Accordingly, it is

**ORDERED** that the motion brought by defendants/third-party plaintiffs Harlem Community Development Corporation i/s/h/a Harlem Urban Development Corporation a/k/a Harlem Community Development Corporation, New York State Urban Development Corporation d/b/a Empire State Development Corporation, Empire State Development Corporation, 223 West 125th Street Danforth, LLC, and Flintlock Construction Services LLC (defendants/third-party plaintiffs) is granted to the extent of:

**156061/2019  SAQUISILI, JUAN GUZMAN vs. HARLEM URBAN DEVELOPMENT**
Motion No. 004

Page 11 of 12

[* 11]

11 of 12

1. granting defendants/third-party plaintiffs summary judgment dismissing plaintiff's Labor Law § 241(6) claim except as predicated on Industrial Code (12 NYCRR) §§ 23-1.7(b)(1)(i), 23-1.7(e)(2), and 23-1.16(b); and

2. granting defendants/third-party plaintiffs summary judgment dismissing plaintiff's Labor Law § 200 and common-law negligence claims; and

3. granting defendants/third-party plaintiffs summary judgment on their first cause of action for contractual indemnification against third-party defendant Sky Materials Corp.; and is further

**ORDERED** that the balance of the motion, including defendants/third-party plaintiffs's request for the reimbursement of their attorneys' fees from third-party defendant, is denied; and it is further

**ORDERED** that plaintiff's Labor Law § 241(6) claim, except as predicated on Industrial Code (12 NYCRR) §§ 23-1.7(b)(1)(i), 23-1.7(e)(2), and 23-1.16(b), and plaintiff's Labor Law § 200 and common-law negligence claims are dismissed against defendants/third-party plaintiffs.

This constitutes the decision and order of this court.

September 27, 2024

HON. VERNA L. SAUNDERS, JSC

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**156061/2019 SAQUISILI, JUAN GUZMAN vs. HARLEM URBAN DEVELOPMENT**
Motion No. 004

Page 12 of 12

12 of 12